UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

– against –

KASHEEN SAMUELS,

Defendant.

**ORDER & OPINION**

18 Cr. 306 (ER)

RAMOS, D.J.:

Defendant Kasheen Samuels is charged in a seven-count second superseding indictment with two robbery conspiracies and one narcotics distribution conspiracy. In advance of trial, Samuels moves to sever his trial into three, a separate trial for each alleged conspiracy, pursuant to Rules 8(a) and 14(a) of the Federal Rules of Criminal Procedure. Additionally, Samuels moves to dismiss Count Three, possession of a firearm in furtherance of a crime of violence, arguing that attempted Hobbs Act robbery does not qualify as a crime of violence as required by 18 U.S.C. § 924(c)(1)(A)(i).

For the following reasons, Samuels' motion for severance is DENIED and the motion to dismiss is DENIED.

**I.   BACKGROUND**

   **A. The Government's Allegations[1]**

The Government's second superseding indictment alleges three conspiracies organized by Samuels, an alleged associate of Sex Money Murder, a Bronx-based affiliate, or "set," of the Bloods gang. These alleged conspiracies include an April 2016 attempted robbery of a Bronx autobody shop owner named Robert Bishun, a June 2017 robbery of Justin Garcia, which

---

[1] In a motion to sever under Rules 8 and 14, the Court may examine both the allegations contained in the operative indictment and representations made by the Government in its briefing. *See, e.g.*, *United States v. Brown*, 676 F. Supp. 2d 220 (S.D.N.Y. Dec. 18, 2009); *United States v. Smith*, No. 05 Crim. 922 (DLC), 2007 WL 980431, at *2 (S.D.N.Y. Apr. 3, 2007).

resulted in the murder of Andrew Torres, and a years-long scheme to distribute narcotics in the Bronx, upstate New York, and Vermont.

The first three counts of the indictment charge Samuels with an attempted robbery of Bishun's Bronx autobody shop in April 2016. The Government alleges that Samuels and his co-conspirators believed that Bishun had hidden drug money, in the amount of $3 million, in the shop. Specifically, Samuels' co-conspirator, Robert Pizarro, said that Bishun had been seen on social media flaunting his money and expensive chains. Gov't Opp. to Mot. to Sever at 4, Doc. 50. Thereafter, Samuels and his co-conspirators began to surveille the shop. *Id.* After a week of staking out the shop, one of the co-conspirators backed out of the robbery scheme. As a result, Samuels invited Philip Haynes, an associate in his drug trafficking scheme, to assist in the robbery. *Id.* Samuels, Haynes, and Pizarro formulated a plan to commit the robbery using Samuels' extended clip semiautomatic handgun. *Id.* After three days of attempting to carry out the robbery, Samuels and his co-conspirators put the robbery on hold out of concern for excessive police presence in the vicinity. *Id.* The robbery was never carried out.

The next charged conspiracy occurred in June 2017. Samuels and two co-conspirators ("CC-2" and "CW-1," respectively) began planning a robbery of Justin Garcia with the help of two women; Garcia was believed by Samuels to be in possession of cash and jewelry from a credit card scheme, the proceeds of which Garcia had been showcasing on social media. Gov't Opp. to Mot. to Sever at 6. On multiple occasions, Samuels and his co-conspirators followed Garcia, but he managed to evade them each time. *Id.* at 7. In the first instance, Samuels and his co-conspirators tracked Garcia and the two women to a Bronx hotel. Before Samuels and the co-conspirators were able to effectuate the robbery, Garcia left the hotel. *Id.* Upon Garcia's exit, Samuels' co-conspirators followed Garcia to a McDonalds drive-thru, put masks on, and fired two shots at him, but Garcia was able to escape. *Id.* Later the same evening, Samuels and his co-conspirators were notified by the two women that Garcia was shopping with them at a Bronx liquor store. The three put on masks, armed themselves, and went to the liquor store, but Garcia left the store before the robbery could be completed. *Id.* at 7.

2

Later, the women texted Samuels that they were being taken to a hotel in New Jersey against their will. Gov't Opp. to Mot. to Sever at 8. Samuels provided the co-conspirators with his handgun and instructed them to drive to the New Jersey hotel and rob Garcia without him. *Id*. The co-conspirators arrived at the hotel and proceeded to Garcia's room. When the hotel room door opened, CC-2 shot at Andrew Torres, killing him instantly. CC-2 then stepped forward and shot Garcia twice. *Id*. They took Garcia's chains and returned to Samuels' residence to return Samuels' gun and give him the chains taken from Garcia. *Id*. Although Samuels was not present for the robbery or murder, he is charged as a principal, in violation of 18 U.S.C. § 2.

Separately, Count Seven charges Samuels with a conspiracy to distribute heroin and crack cocaine from at least 2015 to 2018. Gov't Opp. to Mot. to Sever at 8. Samuels is alleged to have obtained the drugs through armed robberies of drug dealers and known drug spots. *Id*. The Government maintains that the evidence at trial will establish that Samuels dealt narcotics in New York City, as well as upstate New York and Vermont, where he was able charge higher prices. In connection with the narcotics conspiracy, Samuels is alleged to have worked with co-conspirators, Haynes, Pizarro and CW-1. *Id.*

**B. Procedural History**

Samuels was first charged in a three-count indictment, filed on April 25, 2018, which included the following counts associated with the April 2016 attempted robbery conspiracy: (1) conspiracy to commit a Hobbs Act robbery, in violation of 18 U.S.C. § 1951; (2) attempt to commit a Hobbs Act robbery, in violation of 18 U.S.C. § 1951; and (3) possession of a firearm in furtherance of the attempt to commit Hobbs Act robbery, in violation of 18 U.S.C. § 924(c)(1)(A)(i) and 18 U.S.C. § (2). Doc. 2. The Government next filed a first superseding indictment on December 10, 2018, which added a count charging Samuels with conspiring to distribute narcotics, in violation of 21 U.S.C. § 846. Doc. 20. The Government filed a second superseding indictment in October 2019 adding the following counts associated with the June 2017 robbery conspiracy: (1) conspiring to commit a Hobbs Act robbery in violation of 18

U.S.C. § 1951; (2) committing a Hobbs Act robbery in violation of 18 U.S.C. § 1951; and (3) committing Felony Murder, in violation of 18 U.S.C. §§ 924(j)(1) and 2.  Doc. 40.

Samuels now moves to sever the counts in the indictment and dismiss Count Three, possession of a firearm in connection with the attempted robbery of Bishun on the ground that attempted Hobbs Act Robbery is not a crime of violence.  Doc. 46.

## II. MOTION TO SEVER

Samuels moves to sever his trial on two grounds: *first*, that the three charged schemes were improperly joined under Rule 8, and, *second*, that even if properly joined, the Court should exercise its discretion under Rule 14 to sever Samuels' upcoming trial into three.  The Court denies his motion under both grounds.

### A. Applicable Law

The Government may only join multiple offenses in an indictment if the offenses are "of the same or similar character, or are based on the same act or transactions, or are connected with or constitute parts of a common scheme or plan."  Fed. R. Crim. P. 8(a).  Rule 8(a) only requires the offenses be "somewhat alike" or have a "general likeness."  *United States v. Rivera*, 546 F.3d 245, 253 (2d Cir. 2008); *see also United States v. Werner*, 620 F.2d 922, 926–27 (2d Cir. 1980).  As such, joinder under Rule 8(a) largely depends on the facts of each case, *United States v. Blakney*, 941 F.2d 114, 116 (2d Cir. 1999), and the determination of whether the multiple counts have a "sufficient logical connection" to each other.  *United States v. Ruiz*, 894 F.2d 501, 505 (2d Cir. 1990).  "Joinder is proper where the same evidence may be used to prove each count." *Blakney*, 941 F.2d at 116.  The Second Circuit has established that the Rule 8(a) joinder standard is a liberal one for the government to meet.  *United States v. McGrath*, 558 F.2d 1102, 1106 (2d Cir. 1977).

Even if counts within an indictment are properly joined under Rule 8, the Court may order severance of offenses under Rule 14(a) of the Federal Rules of Criminal Procedure if the defendant may suffer prejudice by being required to defend the multiple counts trial.  *Werner*, 620 F.2d at 922.  To demonstrate that severance is proper under Rule 14(a), the defendant must

4

prove that he will suffer substantial prejudice. *Id*. The Second Circuit indicated in *United States v. Rosa* that motions for severance under Rule 14(a) should generally be denied because consolidation of offenses promotes judicial economy and a speedy trial — considerations that frequently outweigh the possible prejudice to the accused. 11 F.3d 315, 341 (2d Cir. 1993).

### B. Discussion

The seven charges are properly joined under Rule 8. The 2016 attempted robbery, 2017 robbery, and narcotics counts all share a sufficiently logical connection and constitute parts of a common scheme or plan.

As an initial matter, the second superseding indictment plainly shows that both robbery conspiracies were instigated by Samuels along with his criminal associates and were committed using the same firearm. Indictment ¶¶ 1–6. Samuels' and his co-conspirators identified victims through social media whom they believed to have large amounts of cash. Doc. 50 at 18. Further, the Government specifically argues that the firearm used in each robbery conspiracy was an extended clip semiautomatic handgun owned by Samuels. *Id.* at 6. Finally, it is expected that the evidence at trial will show that Samuels' co-conspirators in the armed robberies also engaged with him in the drug trafficking scheme and that Samuels committed the armed robberies to obtain money or quantities of narcotics to be used in his drug trafficking scheme. *Id.* at 15–19. For instance, Pizarro collected cash for Samuels in connection with his narcotics scheme in Vermont and assisted in the April 2016 robbery. Similarly, Haynes assisted in Samuels' drug trafficking in Vermont and participated in the April 2016 robbery conspiracy. Likewise, CW-1 assisted in Samuels' drug trafficking in Vermont and participated in the June 2017 robbery conspiracy. *Id.* at 16. The interconnected nature of these conspiracies demonstrates sufficient similarity to meet the "same or similar character" and "common scheme or plan" requirements of Rule 8(a). *Blakney*, 941 F.2d at 116; Doc. 50 at 19 ("[E]ach incident is direct evidence of the other incident charged.").

Samuels emphasizes the difference in manner, time, and location of the conspiracies to argue that joinder is improper. Doc. 47 at 2. Specifically, he submits that the three conspiracies

constitute "distinct and separate offenses" that are not a part of a common scheme and would not contain the same evidence. *Id.* Samuels analogizes his case to *United States v. Tubol*, which found error in joinder and granted severance. 191 F.3d 88 (2d Cir. 1999). Yet, *Tubol* is readily distinguishable from Samuels' case. The two defendants in *Tubol* were charged with robbing a bank and an appliance store that were in close geographical proximity. *Id.* The bank was robbed by one defendant disguised as a Hasidic Jewish man who claimed to have a bomb, while the appliance store was robbed by the other defendant who was not disguised and was armed with a gun. *Id.* The Second Circuit found that joinder was improper under Rule 8(a) since defendants "used distinctly different methods and targeted distinctly different victims" in each instance. *Id.* at 95. In Samuels' case, even with the temporal gap between the 2016 and 2017 robbery conspiracies, he shared distinctive methods for effectuating the crimes, relying on the same co-conspirators and using the same handgun, all in furtherance of his drug trafficking activities. Further, Samuels targeted the two victims whom he believed were in possession of cash or valuable items based on the victim's social media posts. Doc. 50 at 4–6.

      Samuels' case more closely aligns with the district court case *United States v. Smith*, where the defendant was charged in a seven-count indictment which alleged that he sold quantities of cocaine and heroin, participated in armed robberies, and murdered a rival narcotics trafficker. No. 05 Crim. 922 (DLC), 2007 WL 980431, at *2 (S.D.N.Y. Apr. 3, 2007). The court determined that joinder was proper under Rule 8(a) because the charges were sufficiently similar in character and constituted a common scheme or plan. *Id.* (explaining that all counts were similar or a part of a common scheme because they all involved Smith's participation in distribution of retail quantities of crack, the retail crack distribution was a major source of Smith's income, and the motive for the murders was to obtain quantities of narcotics); *see also United States v. Amato*, 15 F.3d 230, 237 (2d Cir. 1994) (holding that the defendant is guilty in a five-count indictment, including charges of racketeering, murder and conspiracy to commit murder, loan sharking, and illegal possession of a gun, for which the evidence offered to prove

the gun possession count was interconnected with the evidence offered for all other counts). Therefore, there is a sufficient logical connection between all Counts such that joinder is proper.

Even assuming joinder is proper under Rule 8(a), Samuels nevertheless contends that severance is warranted under Rule 14(a). The primary argument Samuels proffers is that the jury will view him as an individual with a propensity to commit crimes. Samuels analogizes his case to the facts of *Sampson* where the Second Circuit severed counts related to two drug distribution conspiracies because the "jury could unfairly reason that the defendant had a propensity to deal drugs." Doc. 47 at 4; *United States v. Sampson*, 385 F.3d 183, 192–93 (2d Cir. 2004). However, in *Sampson*, the defendant based his argument on the fact that he intended to testify with respect to one conspiracy but not the other and stated in detail why he would suffer prejudice if severance were not granted. *Id*. Due to the defendant's explanation, and because the evidence would not have been admissible in both trials, the court ordered severance. *Id.* at 192. However, the court required that a defendant describe in detail why prejudice will occur. *Id*. Samuels' case can be distinguished from *Sampson* because Samuels does not assert that he intends to testify with respect to one of the conspiracies but not the others, nor does he detail why the evidence as to one of the conspiracies would not be admissible as to the others.

Further, Samuels also fails to establish that he would suffer "substantial prejudice" sufficient to establish a "miscarriage of justice" from trying the seven counts together. *United States v. Werner*, 620 F.2d 922 (2d Cir. 1980); *United States v. Miller*, 116 F.3d 641, 679 (2d Cir. 1997). Even assuming prejudice existed, the Court can rectify any prejudice by giving limiting instructions to the jury. *Richardson v. Marsh*, 481 U.S. 200 (1987); *see also Herring v. Meachum*, 11 F.3d 374, 378 (2d Cir. 1993) (denying severance of counts and determining that the jury may consider each murder separately as they are easily compartmentalized and the risk of jury confusion can be limited by instruction); *United States v. Rivera*, 546 F.3d 245, 254 (2d Cir. 2008) (denying severance of counts and instructing the jury to consider each count separately).

7

### III. MOTION TO DISMISS

#### A. Applicable Law

An indictment must contain a "plain, concise, and definite written statement of the essential facts containing the offense charged." Fed. R. Crim. P. 7(c)(1). When considering a motion to dismiss, the Court "must treat the indictment's allegations as true." *United States v. Velastegui*, 199 F.3d 590, 592 n.2 (2d Cir. 1999). To withstand a motion to dismiss pursuant to Rule 12, "it is generally sufficient that the indictment set forth the offense in the words of the statute itself." *Hamling v. United States*, 418 U.S. 87, 117 (1974). It is not necessary that the indictment state in detail how the offense was committed. *United States v. Wey*, No. 15 Crim. 611, 2017 WL 237651, at *5 (S.D.N.Y. Jan. 18, 2017).

A defendant violates 18 U.S.C. § 924(c)(1)(A) if he "during and in relation to any crime of violence . . . , uses or carries a firearm, or [], in furtherance of such crime, possesses a firearm." Section 924(c)(3) defines a "crime of violence" as an offense that is a felony and either:

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). Paragraph (A) is often referred to as the "force clause" and paragraph (B) as the "risk-of-force clause." *United States v. Hill*, 890 F.3d 51, 55 (2d Cir. 2018). In *United States v. Davis*, the Supreme Court held the risk-of-force clause to be "unconstitutionally vague" and therefore, unconstitutional. --- U.S. ----, 139 S.Ct. 2319 (2019).

The government alleges in Count Three that Samuels violated § 924(c)(3)(A) because attempted Hobbs Act robbery constitutes a crime of violence. The Supreme Court has held that when evaluating whether an offense constitutes a crime of violence, the "categorical approach" must be applied. *Mathis v. United States*, --- U.S. ----, 136 S.Ct. 2243, 2248 (2016); *see also Taylor v. United States*, 495 U.S. 575, 600 (1990). "[A] formal categorical approach look[s] only

to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." *Id.* Under the approach, the court will "identify the minimum criminal conduct necessary for conviction under a particular statute." *United States v. Acosta*, 470 F.3d 132, 135 (2d. Cir. 2006). The Court will not look to the particular underlying facts of the indictment; instead, it will only consider the elements of the predicate offense. *Hill*, 890 F.3d at 56.

To support a showing that a predicate offense is not a crime of violence, the court requires "more than application of legal imagination to the statute's language." *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). The categorical approach must be founded in reality, logic, and precedent — "not a theoretical possibility" that the conduct does not constitute a crime of violence. *Hill*, 890 F.3d at 56; *accord Gonzales*, 549 U.S. at 194. As relevant here, "the categorical approach requires [the court] to consider the minimum conduct necessary for a conviction of the predicate offense (in this case, [an attempted] Hobbs Act robbery), and then to consider whether such conduct amounts to a crime of violence under § 924(c)(3)(A)." *Hill*, 890 F.3d at 139.

### B. Discussion

Count Three of the Indictment charges Samuels with possessing a firearm in furtherance of the attempted Hobbs Act robbery of Bishun. Doc. 47. Although the Second Circuit has expressly held that *substantive* Hobbs Act robbery qualifies as a crime of violence, *United States v. Hill*, 890 F.3d 51 (2d Cir. 2018), it has yet to determine whether *attempted* Hobbs Act robbery qualifies.[2] Therefore, the Court applies the categorical approach to this crime.

The Court agrees with the district courts in this Circuit that have found attempted Hobbs Act robbery to be a crime of violence under the force clause of § 924(c)(3)(A). *See United States v. Jefferys*, No. 18 Crim. 359 (KAM), 2019 WL 5103822, at *7 (E.D.N.Y. Oct. 11, 2019)

---

[2] This issue has been presented in a number of cases currently pending before the Second Circuit, including *United States v. Collymore*, Dkt. No. 19-596 (filed Mar. 7, 2019), and *United States v. Nolan*, Dkt. No. 16-3423 (filed Nov. 7, 2016). Additionally, the Second Circuit held in 2019 that conspiracy to commit a Hobbs Act robbery is not a crime of violence under § 924(c). *See United States v. Barrett*, 937 F.3d 126, 127 (2d. Cir. 2019).

("[A]ttempted Hobbs Act robbery constitutes a crime of violence under § 924(c)'s elements clause."); *United States v. Robinson,* No. 16 Crim. 545 (ADS), 2019 WL 5864135, at *5 (E.D.N.Y. Nov. 8, 2019) ("[T]he minimum conduct necessary to commit an attempted Hobbs Act robbery amounts to a crime of violence under the elements clause."). The elements of the statute include "attempted use" or "threatened use" of physical force within the definition of crime of violence. 18 U.S.C. § 924(c)(3)(A). If a completed Hobbs Act robbery requires an element of physical force to qualify as a crime of violence, then it must follow that an "attempt" or "threat" to commit the same crime would require an element of force as well. *Robinson*, 2019 WL 5864135, at *5 ("[I]f a completed Hobbs Act robbery involves the requisite use of force to qualify as a crime of violence . . . then a necessary implication is that an attempt to commit the same crime constitutes an attempted use of force"); *cf. United States v. Pereira-Gomez*, 903 F.3d 155, 166 (2d Cir. 2018) (holding that attempted robbery under New York law "qualifies as a '"crime of violence' under the 'force clause'"). Therefore, finding that attempted Hobbs Act robbery falls outside the reach of the statute would run afoul of its plain language.

Other circuit courts have also concluded that attempted Hobbs Act robbery constitutes a crime of violence within the meaning of the force clause. *United States v. St. Hubert*, 909 F.3d 335, 351 (11th Cir. 2018) ("[A]ttempted Hobbs Act robbery qualifies as a crime of violence under § 924(c)(3)(A)."); *see also United States v. Ingram*, 947 F.3d 1021 (7th Cir. 2020) (attempted Hobbs Act robbery is a crime of violence); *Jefferys*, 2019 WL 5103822, at *7; *Robinson*, 2019 WL 5864135, at *5 ("[T]he elements clause expressly includes the "attempted use" or "threatened use" of force within its definition of crime of violence."); *United States v. Edwards*, No. 03 Crim. 204, 2019 WL 3347173, at *3 (E.D. Va. July 25, 2019) ("[A]ttempted Hobbs Act robbery constitutes a crime of violence under the elements clause.").

Samuels argues that attempted Hobbs Act robbery is distinguishable from the substantive offense because "an attempt to commit a Hobbs Act robbery does not require the 'attempted use' of force." Doc. 47 at 8. While Samuels is correct that a conviction for attempt only requires that a defendant (1) had the intent to commit the crime and (b) engaged in a "substantial step towards

10

the commission of said crime," *id.* at 8, he relies on an erroneous interpretation of what constitutes a substantial step. Samuels argues that in the case of robbery, a substantial step can include "reconnoitering the place contemplated for the commission of the crime or possession of paraphernalia to be employed in the commission." *Id.* (citing *United States v. Jackson*, 560 F.2d 112, 120 (2d Cir. 1977)). He further argues that "intent to rob . . . requires no actual, attempted or threatened force." Doc. 47 at 9. Specifically, Samuels cites to a situation in which the threat of force may be empty, like "pointing an unloaded or inoperable gun." *Id.*

He relies on the decision of the Second Circuit in *United States v. Jackson*, as well as several non-controlling cases of district courts in this Circuit, to argue that nonviolent conduct could constitute a substantial step to qualify as attempted robbery. 560 F.2d 112 (2d Cir. 1977); *see also Unites States v. Alfonso*, No. 17 Crim. 128 (JBA), 2019 WL 1916199, at *3 (D. Conn. Apr. 30, 2019); *United States v. St. Hubert*, 909 F.3d 335, 351 (11th Cir. 2018); *United States v. Tucker*, No. 18 Crim. 119 (SJ) (E.D.N.Y. Jan. 8, 2020). However, Samuels' understanding of the Second Circuit's reasoning in *Jackson* is wrong. There, the court found that defendants' actions constituted a substantial step where they

> reconnoitered the place contemplated for the commission of the crime and possessed the paraphernalia to be employed in the commission of the crime[,] loaded sawed-off shotguns, extra shells, a toy revolver, handcuffs, and masks which [were] specially designed for such unlawful use and which could serve no lawful purpose under the circumstances.

*Jackson*, 560 F.2d at 120. Thus, the Second Circuit reached this conclusion not only because the defendant reconnoitered the premises, but also because they took additional steps to carry out the robbery. *Id.* at 120 ("[O]n both occasions these men were seriously dedicated to the commission of a crime, had passed beyond the stage of preparation, and would have assaulted the bank had they not been dissuaded by certain external factors."). "Conduct is not considered a substantial step unless it is strongly corroborative of the criminal intent of the accused." *Davis*, 8 F.3d at 927 (2d Cit. 1993). As a result, a substantial step towards commission of an attempted Hobbs Act robbery requires some indication of violent intent. *See Hill*, 877 F.3d at 719 ("Conviction of

11

attempt requires proof of intent to commit all elements of the completed crime."). In Samuels' case, he took a substantial step that was indicative of a violent intent when he staked out the autobody shop for many days in possession of a handgun and with the intention of using a handgun in carrying out the robbery.

It follows, then, that attempted Hobbs Act robbery is a crime of violence within the meaning of the force clause, under the categorical approach. *Ingram*, 947 F.3d 1021. As determined in *Gonzales*, the categorical approach requires more than a "theoretical possibility that the statute at issue could be applied to conduct that does not constitute a crime of violence." 549 U.S. at 193. Rather, it requires a "realistic probability that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Id.* Samuels' speculation regarding a non-violent attempted robbery is just the type of "theoretical possibility" forbidden by *Gonzales*. *See Hill*, 890 F.3d at 57–59 (rejecting hypotheticals offered to argue that Hobbs Act robbery is not a crime of violence).

Further, the Second Circuit has affirmed the understanding that an attempt would constitute a crime of violence in considering other substantive violent offenses. *See, e.g.*, *United States v. Thrower,* 914 F.3d 770, 776-77 (2d Cir. 2019) (holding that attempted robbery under New York law qualifies as a "violent felony" under ACCA's analogous force clause); *United States v. Sierra*, 782 F. App'x 16, 20 (2d Cir. 2019) ("[A]ttempted murder is a crime unmistakably involving an attempted use of physical force"); *United States v. Scott*, 681 F.3d App'x 89, 95 (2d Cir. 2017) ("Attempted murder in the second degree is a crime unmistakably involving 'an attempted use . . . of physical force' within § 924(c)(3)(A)"); *Hill*, 877 F.3d at 719 ("When a substantive offense would be a violent felony under § 924(e) and similar statutes, an attempt to commit that offense also is a violent felony."); *United States v. Praddy*, 729 F. App'x 21, 24 (2d Cir. 2018) ("[I]t is self-evidence that under New York law attempted murder is a crime unmistakably involving the use of physical force.").

As a result, the Court finds that the minimum conduct necessary for an attempted Hobbs Act robbery amounts to a crime of violence. Samuels' motion to dismiss Count Three is denied.

12

## IV. CONCLUSION

For the forgoing reasons, Samuels' motion for severance is DENIED and Samuels' motion to dismiss is DENIED. The Clerk of Court is respectfully directed to terminate the motion, Doc. 46.

It is SO ORDERED.

Dated:  September 14, 2020
        New York, New York

                                      EDGARDO RAMOS, U.S. D.J.